# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL QUIGLEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Case No. 1:16-cv-00459-SS |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF STEVE WIMBERLY

"1. My name is Steve Wimberly. I am over 18 years of age, of sound mind, capable of making the declarations below, and personally acquainted with the facts declared. My birth date is January 9, 1946. My address is 505 Deep Eddy Ave., Austin, TX 78703. I declare under penalty of perjury that the following is true and correct.

"2. I am a managing member of 710 Colorado, LLC ("Company") and have personal knowledge concerning the Settlement Agreement entered into between the Company and St. Gumbeaux, Inc. in November of 2009 ("Agreement"). The terms of the Agreement are represented by the Term Sheet which is attached hereto as Exhibit A. The Term Sheet was negotiated, drafted and entered into in October of 2009 by myself, on behalf of the Company, and Michael Quigley, on behalf of St. Gumbeaux, Inc. I am the custodian of records for the Company and I have kept this Term Sheet in the ordinary course of business; Exhibit A is a true and correct copy of the Term Sheet. The Company was St. Gumbeaux, Inc.'s landlord and I personally, on behalf of the Company, negotiated and entered into the Term Sheet and subsequent Agreement with St. Gumbeaux, Inc. in order to settle pending lawsuits the Company and St. Gumbeaux, Inc. had against each other related to the lease between the parties. I also personally received and gave consideration as stated in the Term Sheet for my willingness to settle the lawsuit on behalf of my Company. In essence, the consideration I received was all assets of the Company and the right to run the restaurant known as "Gumbo's" at 710 Colorado Street.

"3. Beginning in November, 2009, Michael Quigley had nothing to do with the restaurant known as Gumbo's at 710 Colorado Street and had no authority to write checks on behalf of the restaurant, pay creditors or take any actions whatsoever concerning Gumbo's on 710 Colorado Street. My Company received ownership of all furniture, fixtures, equipment, dishes, payment systems, cash registers and all rights to operate the restaurant and my Company operated the restaurant with full authority and with no involvement whatsoever by Michael Quigley beginning in November of 2009.

"4. For purposes of clarity, Point 20 of the attached term sheet memorializes a transaction in which the Company received $7500.00 for pre-arranged events subsequently held in the normal course of the Company's business. St. Gumbeaux was not the beneficiary of Point 20.

"5. For purposes of clarity, Point 5 of the attached term sheet was subsequently adjusted to payment of $24,659.21 instead of $30,000.00.

FURTHER THE AFFIANT SAYETH NOT

_____
Steve Wimberly

STATE OF TEXAS        )
COUNTY OF Travis      )

Before me, Frances Hernandez, on this day personally appeared ~~Tommy Young~~ Steve Wimberly proved to me through to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that Steve Wimberly executed the same for the purposes and consideration therein expressed. Given under my hand and seal of office this 26 day of May, 2017.

_____
Notary Public, State of Texas
My commission expires: 12-28-2019


FRANCES HERNANDEZ
NOTARY PUBLIC
ID# 12883084-4
State of Texas
Comm. Exp. 12-28-2019

# TERM SHEET
(Draft 10/15/09, 4:59pm)

*"MQ" = St. Gumbeaux Inc, Mike Quigley, The Brown Bar, Gumbo's Downtown*

*"SW" = 710 Colorado LLC, Steve Wimberly, Steve Wimberly assigns*

1. MQ maintains occupancy of the Leased Premises until October 31, 2009.

2. There will be no rent charged to MQ for October 2009

3. On November 1, 2009 MQ will surrender the premises to SW in a fully operational condition and will transfer the ownership of all contents of the premises to SW including but not limited to furniture, fixtures, equipment, decorations, televisions, refrigeration, phone system, security system, soft wares, menus, inventory, supplies, utensils, cooking supplies, cookware, china, glassware, accounting system. MQ will retain ownership of the cash register system and the computers that it is connected to but agrees to let SW use it at the premises until SW is ready to replace it with a different system.

4. SW will pay MQ $40,000 on November 1, 2009.

5. SW will pay MQ an additional $30,000 on or before November 30, 2009. (To be paid on a schedule not to be slower than $7,500 per week)

6. All accrued, past and future liabilities, cash and receivables of MQ will remain the property and responsibility of MQ

7. SW will release all claims against Mike Quigley (personally). SW will release all claims against St. Gumbeaux Inc except for casualty and liability claims pertaining to property damage.

8. MQ will release all claims against SW.

9. MQ agrees to assign governance of the property insurance claim to SW and further agrees that all proceeds collected under the claim will be the property of SW. SW will release St. Gumbeaux Inc from casualty and liability claims pertaining to property damage when the insurance claim is settled.

10. MQ agrees to sign the management agreement that allows SW to operate under the existing Liquor Licenses for Gumbo's and The Brown Bar until new licenses are obtained by SW. As part of the management agreement, SW will indemnify MQ against any liabilities incurred against the license during the period of his operation. SW agrees to obtain the new permits as quickly as possible.

11. MQ agrees to assign the right to the sidewalk lease to SW and to cooperate in transferring the lease to SW

*SW*
*MQ*

12. SW will guarantee employment to Pierluigi Capello at his existing rate for 85 days.

13. SW agrees to reasonably maintain the cash register system and to return it with all hardware and software to MQ when SW obtains a new system.

14. MQ will assign to SW the right title & interest in the Brown Bar name, trademark, domain name, website, phone numbers and all other intellectual property

15. MQ & SW will enter into a Licensing Agreement that allows SW to operate under the name "Gumbo's".

16. MQ & SW hereto agree that SW has the exclusive right to the license agreement in the "downtown area" which is attached as Exhibit I; it is further agreed that MQ has the exclusive right to the Gumbo's Concept in Travis County, Texas (except to the extent that any part of the exclusive area described in Exhibit I and Neutral area described in Exhibit II) MQ & SW agree that neither party will operate the Gumbo's Concept in the Neutral Area Exhibit II without the consent from both parties.

17. MQ will assign to SW the Gumbo's phone numbers and the website and domain for "Gumbo's Downtown"

18. SW agrees to transfer all utilities (phone, gas, trash, etc.) to his name as of November 1, 2009.

19. It is the intent of MQ and SW that they will own the right, title and interest in the "Gumbo's" trademark and licensing rights 50/50. As further consideration in this settlement, MQ will transfer 100% of the right, title and interest in the "Gumbo's" trademark and licensing rights to SW. SW will simultaneously sell 50% of the ownership back to MQ for $10. Both parties agree that all licensing agreements outside of Travis County, Texas (except for the state of Colorado and the license agreement with S.W.D.B., Inc.) will be mutually developed and shared.

20. SW agrees to two restaurant buy-outs April 9th and April 30th, 2010 for $7,500 each plus tax and gratuity.

Agreed to by:

_____  10-15-09
Steve Wimberly              Date
710 Colorado LLC

_____  10/15/2009
Mike Quigley               Date
St. Gumbeaux Inc

Google maps  Address Austin  EXHIBIT I
DOWNTOWN

Get Google Maps on your phone
Text the word "GMAPS" to 466453

NORTH LAMAR
W 6th
WALSH
TOWN LAKE
I 35
MLK

SW

MR



START INSIDE THESE BOUNDARIES

35th & MOPAC
LAKE AUSTIN
LOOP 360 SOUTH (EXCEPT THE INTERSECTION OF WESTLAKE DRIVE & BEE CAVES ROAD)
BEN WHITE BLVD
HWY 183
HWY 290
CAMERON ROAD
I 35

SW  MR

CAUSE NO. D-1-CN-09-000473

| 710 COLORADO, LLC | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| ST. GUMBEAUX, INC. | § | 201ST JUDICIAL DISTRICT |
| Defendant | § | |

CAUSE NO. 217993

| 710 COLORADO, LLC | § | IN THE JUSTICE COURT |
| Plaintiff | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ST. GUMBEAUX, INC. | § | PRECINCT FIVE |
| Defendant | § | |

## COMPROMISE AND SETTLEMENT AGREEMENT AND FULL AND FINAL RELEASE

This COMPROMISE AND SETTLEMENT AGREEMENT AND FULL AND FINAL RELEASE is made and entered into on the date indicated below by and between 710 Colorado, Inc. and St. Gumbeaux, LLC and is intended to settle, compromise and extinguish all claims that the Parties may have arising out of the Dispute in Question.

### I. DEFINITIONS

A. "710" means 710 Colorado, LLC.

B. "Gumbeaux" means St. Gumbeaux, Inc..

1

C. "Wimberly" means Steve Wimberly

D. "Quigley" means Michael Quigley

E. "The Parties" specifically includes 710 and St. Gumbeaux.

F. "Dispute in Question" refers to the dispute described in the pleadings in the Litigation in Question.

G. "Litigation in Question" means the two lawsuits as set forth hereinabove.

H. "The Property" refers to the property located at 710 Colorado, Austin, Travis County, Texas, owned by 710 and which is the subject of the Dispute in Question.

I. "Compromise and Settlement Agreement" or "Agreement" wherever used herein shall mean this Compromise and Settlement Agreement and Full and Final Release.

J. "Lease" means The Brown Building Lease between The LBJ Brown Building, L.P. ("Landlord") and Kona Restaurant Group, Inc ("Tenant"), dated January 12, 1999.

## II. COMPROMISE AND SETTLEMENT

The Parties acknowledge and agree that this Compromise and Settlement Agreement is reached for the purpose of a full and final settlement and compromise of all of 710's claims, demands, and causes of action against Gumbeaux and all of Gumbeaux's claims against 710, including but not limited to any dispute that has arisen or that may arise in the future relating to any matter whatsoever from the beginning of the world to the date of this Agreement, including but not limited to the claims asserted or which could have been asserted in the Litigation in Question, except for damage to the Property. Nothing contained herein shall be construed as an admission of liability by any party, any such liability being expressly denied. The consideration detailed in this Compromise and Settlement Agreement is being paid by way of compromise to avoid expenses and terminate all controversies between Gumbeaux and 710, regardless of the extent of the damages and expenses.

All claims, excepting damage to the Property, between the Parties hereto in the Litigation in Question will be dismissed with prejudice with all taxable costs taxed against the Party incurring same.

## III. AGREEMENT

A. <u>Consideration</u>. As consideration for this Agreement;

(1) Gumbeaux agrees to:

    a. Surrender possession of the Property to 710 on or before even date herewith;

    b. Convey, per the <u>Bill of Sale</u> attached hereto, all furniture, fixtures, equipment,

decorations, televisions, refrigeration, phone system, security system, soft wares, menus, inventory at cost, supplies, utensils, cooking supplies, cookware, china, sound system, glassware and accounting system;

c.   Grant 710 the right to use the cash register system and connected computers for a reasonable period at no additional cost;

d.   ~~Grant, per the terms of the Management Agreement attached hereto, 710 the right to use the liquor license currently in place for the Property;~~ West Eighth, LLC per the Management Agreement attached hereto, to provide for the sale of alcoholic beverages by the Manager and also to provide labor, supplies, equipment, accounting and auditing services among others for Gumbeaux at the premises of 201 West Eighth Street and 710 Colorado St. Austin, Texas 78701;

e.   Assign, per the terms of the <u>Assignment</u> attached hereto, 710 the sidewalk lease with the City of Austin, to 710;

f.   Assign, per the terms of the <u>Assignment</u> attached hereto, 710 the name "Brown Bar", together with associated trademark, domain name, website, phone numbers to the property, and all intellectual property associated with the name "Brown Bar";

g.   Grant, per the terms of the <u>Licensing Agreement</u> attached hereto, 710 the right to operate under the name "Gumbo's", including therein the exclusive right of 710 to operate as "Gumbo's", and utilize the Gumbo's concept, in that area loosely defined as "downtown" and further described as set forth on that map attached hereto. Said map further identifying an area as "neutral" in which all aparties shall refrain from operating within under the name "Gumbos" without the consent from both parties. In furtherance thereof, Gumbeaux will grant 710 the name and right to use "Gumbo's Downtown", together with the associated phone numbers, website and domain. It is further agreed that Michael and Francine Quigley's entities has the exclusive right to the Gumbo's Concept in Travis County, Texas (except to the extent that any part of the exclusive area described as "downtown" and "neutral" area described above);

(2)   710 agrees to:

a.   Deposit into escrow with John W. Pleuthner, the sum of $40,000.00 per the terms and conditions of the <u>Escrow Agreement</u> attached hereto;

b.   Pay to Gumbreaux the cost of the inventory as of November 1, 2009 for the restaurant and bar at the Property in four equal installments commencing with a first payment no later than November 9, 2009 and a like installment each successive Monday thereafter until paid;

c.   Release Gumbeaux from any claim for past due rent.

3

d.  Place all utilities for the property into 710's name.

e.  Retain the services of Pierluigi Capello per the terms on employment agreement, for a period of no less than 85 days from date hereof, at his normal compensation.

(3) Both Parties agree to take count of the inventory for both operations of Gumbeaux at the property with an effective date of November 1, 2009;

(4) Quigley and Wimberly in accordance with the releases as set forth below, release each other from any and all claims arose from the facts and circumstances that gave rise to the Dispute in Question and except as for damage to the Property.

B.  Release by 710. Except for any damage to the Property that occurred during the term of the Lease, 710, along with it's successors and assigns, representatives, employees, shareholders, directors, officers, parent or subsidiary organizations, related companies and legal entities, affiliates, owners, agents, trusts, trustees, and attorneys, hereby forever releases, acquits, discharges and covenant to hold harmless Gumbeaux, it's successors and assigns, representatives, employees, shareholders, directors, guarantors, officers, parent or subsidiary organizations, related companies and legal entities, affiliates, owners, agents, trusts, trustees, and attorneys, from and against any and all claims, counterclaims, suits, demands, or causes of action under contract, in tort, by statute, constitution or otherwise, whether known or unknown, that were or could have been raised against Gumbeaux arising directly or indirectly out of any matter whatsoever from the beginning of time to the date of this Agreement, including but not limited to the Dispute in Question, except that under all circumstance a full and complete release of Michael and Francine Quigley, or the claims and/or allegations that form the basis of the Litigation in Question. 710 hereby acknowledges that the promises as detailed in this Compromise and Settlement Agreement is a full, final and complete satisfaction, settlement, release, and discharge of any and all liability whatsoever on the part of the 710 by reason of any condition, cause, or thing in any way related to, or arising out of, the Dispute in Question, or the claims and/or allegations that form the basis of the Litigation in Question and for any other matter from the beginning of the world to the date of this release. 710 expressly WARRANTS AND REPRESENTS that it has not assigned any portion of any cause of action arising out of the Dispute in Question to anyone.

C.  Release by Gumbeaux. Gumbeaux, along with it's successors and assigns, representatives, employees, shareholders, directors, officers, parent or subsidiary organizations, related companies and legal entities, affiliates, owners, agents, trusts, trustees, and attorneys, hereby forever releases, acquits, discharges and covenants to hold harmless 710, it's successors and assigns, representatives, employees, shareholders, directors, officers, parent or subsidiary organizations, related companies and legal entities, affiliates, owners, agents, trusts, trustees, and attorneys, from and against any and all claims, counterclaims, suits, demands, or causes of action under contract, in tort, by statute, constitution or otherwise, whether known or unknown, that were or could have been raised against 710 arising directly or indirectly out of any matter whatsoever from the beginning of time to the date of this Agreement, including but not limited to the Dispute in Question, or the claims and/or allegations that form the basis of the Litigation in

Question. Gumbeaux hereby acknowledges that the promises as detailed in this Compromise and Settlement Agreement is a full, final and complete satisfaction, settlement, release, and discharge of any and all liability whatsoever on the part of Gumbeaux by reason of any condition, cause, or thing in any way related to, or arising out of, the Dispute in Question, or the claims and/or allegations that form the basis of the Litigation in Question and for any other matter from the beginning of the world to the date of this release. Gumbeaux expressly WARRANTS AND REPRESENTS that it has not assigned any portion of any cause of action arising out of the Dispute in Question to anyone.

D.  Entire Agreement. This Agreement sets forth the entire agreement between the Parties. No other promises or agreements shall be binding on any party unless it is in writing and signed by both Parties.

E.  Modification. No provision of this Agreement may be waived, or modified in any respect whatsoever except by written agreement signed by the Parties to this Agreement.

F.  Severability. In the event any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement.

G.  Multiple counterparts. This Agreement may be executed in multiple counterparts, including counterparts transmitted by telephonic document transfer, with the same effect as if all Parties had signed the same, and all such counterparts shall be construed together to constitute one original instrument. Each counterpart shall have the same effect as the original.

H.  Full Authority. The Parties represent that they have full authority to enter into this Agreement, and the individual parties are competent and of the age of majority.

I.  Full Knowledge, Consent and Voluntary Signing of Agreement. All Parties acknowledge and agree that: (a) they have carefully read the Agreement and fully understand its meaning, intent and terms; (b) they have full knowledge of its legal consequences; (c) they agree to all the terms of the Agreement and are voluntarily signing below; (d) other than as stated herein, they attest that no promise or inducement has been offered for this Agreement; (e) they have had full opportunity for review of this agreement by legal counsel of their own choosing; and (e) they are legally competent to execute this Agreement and accept full responsibility therefor.

J.  No Duress. Each party agrees to sign this Agreement as its own voluntary act and deed, and represents that such execution was not the result of any duress, coercion or undue influence.

K.  Non-Admission. All Parties acknowledge that this Agreement does not constitute an admission by any Party of any liability whatsoever, but results from the Parties' desire to expeditiously resolve disputed issues of fact and law, and further acknowledge that the Parties deny all allegations of violation of any law, statute, ordinance, insurance, regulation, common law, tort or contract. By this Agreement, the Parties are compromising claims that they dispute in good faith.

L.  No Representations. The Parties represent and warrant that no representations about the nature and extent of the claims, damages, losses or injuries, legal liability, financial responsibility or income tax consequences, if any, made by the other Party, has induced them to enter into this Agreement. In agreeing to the terms and conditions of this Agreement, the Parties have considered not only all known facts, damages and losses, but also the fact that consequences not now known may result from occurrences or events that may have given rise to the claims released in this Agreement. The Parties further recognize that the facts relating to the underlying claims released by this Agreement may turn out to be different from the facts now known or believed to be true by the Parties. Each party agrees that this Agreement shall not be subject to termination by reason of any different facts.

M.  Ownership of Claims. Each Party represents and warrants that they have not assigned their rights or claims herein released to any other person, company, or entity.

N.  Successors and Assigns. The provisions of this Agreement shall be binding and inure to the benefit of each of the Parties and their respective heirs, executors, administrators, agents, representatives, successors and assigns.

O.  Governing Law. This Agreement has been executed and delivered in the State of Texas. This Agreement shall be deemed to be a contract made under and shall be construed in accordance with and governed by the law of the State of Texas and of the United States of America, as applicable. Venue for any lawsuit arising out of this Agreement shall be in Travis County, Texas.

P.  Arbitration. Any dispute arising in whole or in part out of the terms and conditions of this agreement, shall be resolved by binding arbitration.

Q.  Confidentiality. The terms and conditions of this Agreement shall remain confidential between the parties, to be disclosed as necessary only to fulfill the terms hereof.

This COMPROMISE AND SETTLEMENT AGREEMENT AND FULL AND FINAL RELEASE reached herein has been negotiated in good faith by the parties hereto.

AGREED TO AS TO FORM AND SUBSTANCE:

710 Colorado, LLC

_____
By: Steve Wimberly

Date: November_____, 2009

St. Gumbeaux, Inc.

_____
By: Michael Quigley

Date: November_____, 2009

# AFFIDAVIT

| STATE OF TEXAS | § |
|---|---|
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Steve Wimberly, known to me to be the person whose name is subscribed to the above and foregoing instruments, and acknowledged to me that he executed this COMPROMISE AND SETTLEMENT AGREEMENT AND FULL AND FINAL RELEASE, in the capacity stated herein and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this ____ day of November, 2009.

_____
NOTARY PUBLIC, IN AND FOR THE
STATE OF _____

My Commission Expires:  Printed Name of Notary Public

8

# AFFIDAVIT

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Michael Quigley, known to me to be the person whose name is subscribed to the above and foregoing instruments, and acknowledged to me that she executed this COMPROMISE AND SETTLEMENT AGREEMENT AND FULL AND FINAL RELEASE, in the capacity stated herein and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this \_\_\_\_ day of November, 2009.

_____

NOTARY PUBLIC, IN AND FOR THE

STATE OF _____

My Commission Expires:  Printed Name of Notary Public

_____  _____