# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **MICHAEL QUIGLEY** | § | |
| | § | |
| **V.** | § | **NO. A-16-CV-459 SS** |
| | § | |
| **UNITED STATES OF AMERICA** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE SAM SPARKS
      UNITED STATES DISTRICT JUDGE

Before the Court are the United States' Motion for Summary Judgment (Dkt. No. 37); Plaintiff's Response (Dkt. No. 44); the United States' Reply (Dkt. No. 49); Plaintiff's Motion for Summary Judgment (Dkt. No. 52); the United States' Response (Dkt. No. 53); Plaintiff's Reply (Dkt. No. 54); and the Parties' Post-Hearing Briefs (Dkt. Nos. 56-58). The District Court referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), Federal Rule of Civil Procedure 72 and Rule 1of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Plaintiff Michael Quigley ("Quigley") was the owner of St. Gumbeaux, Inc., which operated the "Gumbo's" restaurant in Austin, Texas. After experiencing financial problems, Quigley placed St. Gumbeaux into bankruptcy on September 16, 2009. On August 22, 2011, the Internal Revenue Service assessed a total of $54,635.64 in tax penalties against Quigley pursuant to 26 U.S.C. § 6672 for failing to pay the IRS withholding, or "trust fund," taxes for all four quarters in 2009. Quigley paid the penalties and filed a claim for refund under 26 U.S.C. § 6511, which the IRS denied. On April 11, 2016, Quigley filed this lawsuit against the United States for a refund of taxes pursuant to 26 U.S.C. § 7422, as well as a demand for attorney's fees and damages under 26 U.S.C. § 7430 &

7433.[1]  Quigley argues the penalty assessed by the IRS was erroneous because he paid all of his payroll withholding taxes and did not have any knowledge of unpaid withholding taxes.

On April 5, 2017, the United States filed a motion for summary judgment arguing that the summary judgment evidence demonstrates as a matter of law that Quigley acted willfully in failing to collect, account for, or pay over the payroll taxes withheld from the wages of St. Gumbeaux's employees pursuant to 26 U.S.C. § 6672 for every quarter in 2009.[2]  Quigley opposes the Motion, contending that the undisputed evidence does not show he acted willfully in not withholding and paying the taxes.  Quigley has also filed his own motion for summary judgment arguing that the United States has failed to show that he willfully failed to pay withholding taxes.  On June 12, 2017, the Court held a hearing on the motions, and allowed the Parties to submit further briefing on the issue of willfulness.  The Parties have submitted their post-hearing briefs, and the issue of willfulness is ripe for decision.

## II.  STANDARD OF REVIEW

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).

---

[1]On April 21, 2017, the undersigned issued an Interim Report and Recommendation recommending that the District Court dismiss Quigley's claim under 26 U.S.C. § 7433 for lack of subject matter jurisdiction because Quigley has not exhausted his administrative remedies with regard to that claim.  Dkt. No. 46.  That claim is not before the Court in the present motions.

[2]One piece of the evidence the United States relied on in its motion was Quigley's answer to Request for Admission No. 23.  When the admission response came to Quigley's attention, he immediately moved to amend that answer, arguing his response "admitting" the request was a mistake.  On May 1, 2017, the Court permitted that amendment.  Dkt. No. 50.

A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

# III. ANALYSIS

## A. 26 U.S.C. § 6672

The Internal Revenue Code requires employers to withhold from an employee's wages the employee's share of federal social security, Medicare, and income taxes, and to pay those withheld sums to the IRS. *See* 26 U.S.C. §§ 3102(a), 3402(a). These taxes are often referred to as "trust fund" (as well as "payroll" or "withholding") taxes, because the employer holds them in trust for the benefit of the United States. *See Slodov v. United States*, 436 U.S. 238, 242-3 (1978) (*citing* 26 U.S.C. § 7501(a)); *Barnett v. Internal Revenue Service*, 988 F.2d 1449, 1453 (5th Cir.), *cert. denied*, 510 U.S. 990 (1993); *Howard v. United States*, 711 F.2d 729, 733 (5th Cir. 1983). If an employer fails to pay these trust fund taxes to the United States, the Code imposes a penalty on the employer equal to the entire amount of the unpaid taxes:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over . . .

26 U.S.C. § 6672(a). The statute requires two elements before the IRS may impose a penalty on an employer: (1) "the person must be a 'responsible person'" and (2) "the person must [have] act[ed] 'willfully in not paying the taxes.'" *Wood v. United States*, 808 F.2d 411, 414 (5th Cir. 1987) (quoting *Brown v. United States*, 591 F.2d 1136, 1139-40 (5th Cir. 1979)). Quigley concedes that he was a "responsible person" within the meaning of the statute. Dkt. No. 37-2 (response to Request for Admission No. 36) ("Admit that you were a responsible person within the meaning of 26 U.S.C. § 6672 for all four quarters of 2009 for St. Gumbeaux, Inc. ANSWER: Admit"). The sole issue is therefore whether he acted willfully in not paying over the trust fund taxes.

1.      **Willfulness**

Section 6672(a) only imposes liability on a responsible person if that person "willfully" failed to collect, account for, or pay over the withheld employment taxes. Willfulness "requires a voluntary, conscious, and intentional act, but not necessarily a bad motive or evil intent." *Turnbull v. United States*, 929 F.2d 173, 179 (5th Cir. 1991). A responsible person acts willfully (1) if he knows the payroll taxes are due but uses corporate funds to pay other creditors, or (2) if he recklessly disregards the risk that the taxes may not be remitted to the government. *Logal v. United States*, 195 F.3d 229, 232 (5th Cir. 1999). "The responsible person bears the burden of proving his actions were not willful." *Morgan v. United States*, 937 F.2d 281, 286 (5th Cir. 1991); *see also*, *Barnett*, 988 F.2d at 1453 ("[t]he burden of proof is on the taxpayer to disprove his responsible-person status or willfulness"). The United States argues that it has established as a matter of law that Quigley acted willfully because it has pointed to evidence showing that he paid creditors other than the IRS after he was aware that the taxes remained unpaid. Though he does not contest the United States' evidence that he made payments to other creditors throughout September and October of 2009, Quigley argues that the United States has failed to show that he had knowledge of the allegedly unpaid withholding taxes before he received notice from the IRS in 2010, and thus he did not know those trust fund payments were due when he the paid the creditors.

"When a responsible person becomes aware of tax liability, he has a 'duty to ensure that the taxes [are] paid before any payments [are] made to other creditors.'" *Conway v. United States*, 647 F.3d 228, 234 (5th Cir. 2011) (citing *Barnett*, 988 F.2d at 1457), *cert. denied*, 566 U.S. 936 (2012). "Where there is undisputed evidence that the responsible person directed payments to other creditors while knowing of the tax deficiency, willfulness is established as a matter of law." *Id.* "[A]

responsible person who is found to have acted willfully for at least one quarter is a willful actor for preceding quarters, even if he was unaware of the unpaid payroll tax liability in those earlier quarters." *Arriondo v. United States*, 196 F. Supp. 3d 708, 724 (S.D. Tex. 2016). Thus, a responsible person who learns of the underpayment of taxes must use later acquired unencumbered funds to pay the taxes; the failure to do so constitutes willfulness. *Mazo v. United States*, 591 F.2d 1151, 1157 (5ᵗʰ Cir. 1979).

As mentioned, the evidence regarding payments to other creditors is undisputed. In St. Gumbeaux's 941 tax return filed by Quigley on January 29, 2010, Quigley stated that the "final date [he] paid wages" was October 31, 2009.[3] Dkt. No. 37-3 at 14. Payment of wages to employees, including paying oneself a salary, counts as a payment to a creditor for the purposes of determining willfulness. *See Logal*, 195 F.3d at 232 (finding that defendant paid a creditor other than the IRS when he paid his own wages and wages of his employees). In addition, Quigley's response to Request for Admission No. 28, which asked him to admit the he "continued to receive [his] salary or other type of remuneration from St. Gumbeaux, Inc. after [he] knew St. Gumbeaux, Inc. had unpaid federal withholding taxes," was:

> Admit that after sinking all money back into the restaurant and cashing out retirement accounts to try to keep the restaurant going I took money from the cash flow of the business to feed my family and pay utilities. The unpaid portion of the taxes was not the trsut [sic] fund portion.

---

[3]As with many of the details presented in this case, this is inconsistent with other evidence in the record. Specifically, in a letter to the IRS dated December 20, 2012, Quigley stated that his "last payroll obligations were October 31, 2009, *and were paid on November 13, 2009.*" Dkt. No. 37-9 (emphasis added). In one of his declarations, Quigley states that he handed over operation of the restaurant in "November 2009." Dkt. No. 52-1 at ¶ 4.

Dkt. No. 37-2 at 7. Although Quigley disputes that this answer shows he paid himself knowing there were unpaid trust fund taxes, as opposed to the employer's share of taxes, the answer does show that he made payments to himself when there were payroll taxes owing. Further, the admission asked that he admit he paid himself funds after knowing he had "unpaid federal withholding taxes." The only "withholding" taxes an employer collects are those withheld from employees' wages for income, social security, and Medicare taxes, all of which are "trust fund taxes." Less ambiguously, when St. Gumbeaux filed for bankruptcy protection in September 2009, Quigley made payments to creditors other than the IRS. He filed a Motion to Pay Critical Vendors and Certain Pre-Petition Tax Liabilities on September 17, 2009, requesting permission to pay eight different vendors for food supplies and beverages, an amount of at least $16,000. Dkt. No. 37-7 at 2. He also sought permission to pay the Texas Comptroller approximately $15,000 for unpaid sales and alcoholic beverage taxes. *Id.* at 3. That motion was approved by the bankruptcy judge on September 21, 2009. *In re: St. Gumbeaux, Inc.*, No. 09-12600-cag, in the United States Bankruptcy Court for the Western District of Texas.[4] Quigley does not dispute any of this evidence. Accordingly, the dispositive issue on willfulness is whether Quigley was aware of St. Gumbeaux's unpaid trust fund taxes on or before the dates he made these payments (September 21, 2009 and October 31, 2009).

On this point, Quigley contends that he did not have any knowledge of the unpaid payroll taxes "at any time prior to 2010." Dkt. No. 44 at 1. Yet in the September 16, 2009 Voluntary Petition for Chapter 11 Bankruptcy filed on behalf of St. Gumbeaux, and signed by Quigley under penalties of perjury, Quigley stated that St. Gumbeaux owed the IRS $35,000 in "Payroll Taxes."

---

[4]The Court takes judicial notice of the docket entry approving the motion contained in the publicly available file of the bankruptcy case. FED. R. EVID. 201(c)(1).

Dkt. No. 37-4 at 6. In similar settings, the Fifth Circuit has found such bankruptcy filings as adequate evidence of knowledge. *See Conway*, 647 F.3d at 234 (finding that taxpayer knew of tax liability no later than January 19, 2001, when he filed a bankruptcy schedule reflecting unpaid taxes). Quigley responds that he was not referring to withholding taxes when he used the term "Payroll Taxes" in these schedules, but was instead referring to *St. Gumbeaux's* share of FICA and Medicare taxes. Though the IRS and courts routinely refer to trust fund or withholding taxes as "payroll taxes," *e.g.*, *Turnbull*, 929 F.2d at 179, there is no other evidence in the record to clarify exactly the taxes Quigley was referring to in his bankruptcy schedules. The IRS also notes that St. Gumbeaux's balance sheet dated as of December 31, 2009, shows under the general category of "Liabilities," and the sub-heading of "Payroll Liabilities," that "941 Taxes Paid" in 2009 were only $73,751.51, and that a liability titled "Federal W/H" in the sum of $32,250.71 remained. Dkt. No. 37-12 at 2. It is unclear, however, whether these were figures Quigley was aware of in 2009.[5] If this were the IRS's only evidence for showing Quigley's knowledge, summary judgment would be unwarranted.

However, the primary argument the IRS makes regarding Quigley's knowledge of the trust fund debt is based on two pieces of evidence: (1) the sums reported to the IRS in the returns Quigley signed; and (2) the IRS's well-known policy of applying monies received from employers first to any of the employer's outstanding tax debts, and only after that to the trust fund debt. The IRS points

[5]These records were submitted by the IRS in its motion for summary judgment. Consistent with the generally sloppy nature of the IRS's submissions, there is no evidence of when these accounting records were created, or who created them. The IRS's counsel's affidavit accompanying the records states only that the records were furnished to him by Plaintiff's counsel in discovery. Dkt. 37-1 at 3 ¶ 12. The top left corner of the balance sheet does contain what appears to be a date and time stamp, which reads "3:29 PM 10/03/2016." That however may reflect the date and time that particular copy of the balance sheet was printed, and does not answer the question of whether Quigley was aware of these figures in 2009.

to the case law holding that "in the absence of a direction by the taxpayer the IRS can apply a payment to any outstanding tax liability of the taxpayer." *Wood v. United States*, 808 F.2d 411, 416 (5th Cir. 1987) (citing *Nat'l Bank of the Commonwealth v. Mechanics' Nat'l Bank*, 94 U.S. 437, 439 (1877)). It notes that the courts have consistently recognized that the IRS follows the practice of applying payments "to FICA employers' tax liabilities *before* applying the funds to withholding taxes in the absence of direction by the taxpayer." *Id; see also, Gann v. United States*, 130 Fed. Cl. 611, 613 (Fed. Cl. 2017) ("The IRS's policy of generally applying payments first to non-trust fund liability and second to trust fund amounts owed is no secret nor is it illegal."), *appeal filed* (Fed. Cir. June 15, 2017).

One of the few areas in which the evidence appears to be clear is on the tax due to the IRS. For these figures, both sides rely upon St. Gumbeaux's Employer Quarterly Federal Tax Returns (or "941s") for 2009, all of which were signed by Quigley. *See* Dkt. No. 37-3. Combining the four returns for 2009, St. Gumbeaux reported a total payroll tax liability to the IRS of $160,504.09. Breaking this out between St. Gumbeaux's employer taxes, and the employees' taxes withheld by St. Gumbeaux, this included $100,407.30 in employee taxes ($40,310.50 for income taxes and $60,096.80 for social security and Medicare taxes), as well as $60,096.80 for St. Gumbeaux's employer-share of the social security and Medicare taxes.[6] Dkt. No. 37-3. Thus, for all of 2009,

---

[6]During the relevant period (and still today), the social security wage tax was 6.2% on the employee, and an additional 6.2% on the employer. Similarly, the Medicare tax rate on wages was 1.45% for each. Thus, in addition to withholding income taxes from employees' wages, employer's also withhold from wages the employees' share of the social security and Medicare taxes. The 941 form has the employer calculate on a single line both the employee's *and* the employer's social security and Medicare taxes. Thus, one half of the social security and the Medicare taxes reflected on a 941 form are the taxes withheld from employees, and the other half are the taxes owed by the employer.

according to the tax returns filed by St. Gumbeaux and signed by Quigley, its total "trust fund" tax obligation was $100,407.30.

The IRS argues that Quigley was either aware, or disregarded the obvious risk, that—absent a direction by him that all funds sent to the IRS were to be applied to the trust fund obligation first—the total of the payments he sent to the IRS throughout 2009 was tens of thousands of dollars short of fulfilling his trust fund payment obligations. Even limiting the analysis to the first three quarters of 2009 demonstrates this.[7] During that time, according to the 941s signed by Quigley, St. Gumbeaux's payroll tax liabilities were as follows:

|                  | Q1         | Q2         | Q3         | Total          |
|------------------|------------|------------|------------|----------------|
| Employer tax due | $17,541.50 | $19,670.53 | $16,052.36 | **$53,261.39** |
| Trust funds due  | $31,294.53 | $33,414.81 | $26,887.01 | **$91,596.35** |

Dkt. No. 37-3. As for the amount that St. Gumbeaux actually sent to the IRS for 2009, while the evidence is confused, even using the figure most favorable to Quigley, the amount he paid was woefully short of St. Gumbeaux's obligation. Specifically, Quigley claims St. Gumbeaux paid the IRS $99,019.94 in payroll taxes in 2009 (all of which was paid between January 22 and October 13, 2009). Dkt. No. 44-1 at 3 ¶ 7. Regardless of the uncertainty surrounding this figure,[8] even if the Court assumes that between January and October 2009 St. Gumbeaux sent the IRS slightly more than $99,000, the result is still unfavorable to Quigley. Given the IRS's well-known rule of applying

---

[7]In his declaration Quigley inexplicably ignores the fourth quarter of 2009, even though he admits that he continued to operate St. Gumbeaux until November 2009. As addressed below, Quigley's failure to pay the IRS *any* amount of money for the fourth quarter of 2009 is a separate reason why his arguments fail.

[8]As discussed in more detail below, the Court has been unable to replicate this figure using the same records Quigley used.

funds paid by an employer first to outstanding taxes owed by the employer, and then to the trust fund obligation, and given further that it is undisputed St. Gumbeaux never directed the IRS to apply payments differently, for the three quarters ending September 30, 2009, the payments St. Gumbeaux sent to the IRS were applied as follows:

| | |
|---|---|
| Payments from St. Gumbeaux: | $99,019.14 |
| St. Gumbeaux's taxes owed: | <u>$53,261.39</u> |
| Amount remaining after employer tax: | $45,757.75 |
| | |
| Trust funds due: | $91,596.35 |
| Remaining sum left: | <u>$45,757.75</u> |
| | |
| Remaining unpaid trust fund obligation: | **<u>$45,838.60</u>** |

The IRS contends this evidence shows that Quigley either knew he owed the IRS tens of thousands of dollars in September and October 2009 for trust funds (when St. Gumbeaux paid other corporate debts), or in making his payments he disregarded the obvious risk that the IRS would apply St. Gumbeaux's payments to St. Gumbeaux's tax obligations first.

Quigley's response to this argument, if nothing else, has been consistent since his dispute with the IRS began. He claims that even if all of the above is true, his *subjective* intent was that every penny he sent the IRS was supposed to go toward paying his trust fund obligations, and the fact that the total paid over to the IRS in 2009 was roughly the same or more than the trust funds due for that year, in his mind at least, corroborates this. The Fifth Circuit and numerous other courts, however, have specifically rejected this argument. For example, in *Wood* the taxpayer made this same argument, contending that because he made several payments to the IRS "he could not have willfully failed to make those deposits." The Fifth Circuit rejected this contention, relying on the IRS's policy of applying payments toward the employer's tax obligations first. Noting that Wood

had not made a written designation to the IRS to apply payments to the trust fund obligations first, the Fifth Circuit found that he willfully failed to pay his withholding taxes:

> Because Red Ant did not pay the balance of employment taxes due at the end of the quarter, Wood did not do all the law required of him. His disregard for the obvious risk that the IRS would apply the deposits to the FICA employers' tax rather than the withholding taxes is sufficient to establish willfulness for the amounts deposited by Red Ant. For the same reason, Wood did not demonstrate reasonable cause for his failure to pay.

> The district court's finding of willfulness was not clearly erroneous. Wood was properly held liable for all the withholding taxes due.

*Wood,* at 417; *see also, Lencyk v. Internal Revenue Service*, 384 F. Supp.2d 1028 (W.D. Tex. 2005) (holding that taxpayer was liable under § 6672 for willfully failing to pay withholding taxes where he never made a written designation to the IRS to apply payment to withholding taxes first); *Gann*, 130 Fed. Cl. at 613 (same).

Further, it is not even clear from the record that St. Gumbeaux did in fact send the IRS all or more than the amount of the withheld employee taxes it held in trust. Quigley's argument is that he withheld a little more than $92,000 from his employees' wages in 2009, and he sent the IRS a little more than $99,000, or roughly $7,000 more than he had withheld. Dkt. No. 44-1 at 3 ¶ 7. But Quigley's figures are doubtful. With regard to the amount he claims he withheld from wages—$92,027.79 —Quigley never explains the source of his figure. As noted above, the 941 returns Quigley signed and filed with the IRS report withholding of $100,407.30. Further, a number of documents in the summary judgment record contain yet an even different sum for this same item.[9] Further, Quigley's calculation of the amount St. Gumbeaux sent to the IRS in 2009 is also

---

[9]In a letter Quigley sent the IRS on December 20, 2012, he claimed he had withheld $104,896.87 from employees' wages. Dkt. No. 37-9. His attorney repeated this same figure in a letter to the IRS dated August 14, 2014. Dkt. No. 37-10.

questionable. Relying on copies of electronic fund transfers to the IRS by St. Gumbeaux in 2009, Quigley claims St. Gumbeaux sent $99,019.94 to the IRS in 2009. Dkt. No. 44-1. But using the same records Quigley says he used, the Court has been unable to confirm this figure. The payment records (Dkt. No. 44-1 at 17-19) contain numerous interlineations which Quigley's counsel explained at the hearing indicate whether those entries[10] were counted in the calculation. Using Quigley's explanation of the meaning of these notes, the Court has been unable to replicate Quigley's figure of $99,019.94, but instead has come up with $97,140.27 as the amount St. Gumbeaux paid to the IRS in 2009. As already noted, though Quigley claims without explanation he only withheld $92,027.79 from wages for all of 2009, the 941s he signed report he withheld $100,407.30. Thus, the summary judgment record does not demonstrate that Quigley sent the IRS all of the funds he withheld from his employees' wages, but instead suggests he was short by $3,267.03. This would suggest that Quigley *did* know by no later than October 13 there was a trust fund debt to the IRS, since he had actual knowledge of the sums withheld from employees' wages (as he signed the 941s), and had actual knowledge of the payments made to the IRS, as he was the person making the transfers.[11]

The fourth quarter of 2009 is an even bigger problem for Quigley. As noted in the 941 for that quarter, the tax obligations for that period were as follows:

| | |
|---|---|
| Employer tax due: | $6,832.39 |
| Trust funds due: | $8,810.95 |

---

[10]Apparently, some entries on the attachment are duplicates or otherwise do not reflect actual payments.

[11]Using different figures, Quigley's attorney also told the IRS in an August 14, 2014 letter "the whole amount paid" by Quigley for the entirety of 2009 ("$104,035.93") was "short of the Trust Fund obligation" by "approximately $800.00." Dkt. No. 37-10.

Dkt. No. 37-3 at 13. The record is undisputed that St. Gumbeaux paid employees at least through October 31, 2009, and perhaps as late as November 13, 2009, but made no payment of any monies to the IRS after October 13, 2009. So, for at least the period from October 14 - October 31, 2009, there is no possible question that Quigley made payments to third parties while knowing he owed outstanding trust fund taxes (since he reported that he did indeed withhold taxes from the October wages and tips). As noted above, a responsible person who is found to have acted willfully for at least one quarter is a willful actor for all preceding quarters and for this reason alone Quigley is liable the penalty for all four quarters of 2009. *See Arriondo*, 196 F. Supp. 3d at 724.

As explained at the outset, there are two ways to demonstrate that a responsible person was willful in not paying trust fund taxes. Either the IRS can show that the person paid corporate debts after knowing there were unpaid trust fund taxes, or it can show that the person recklessly disregarded the risk that the taxes may not be remitted to the government. If nothing else, the summary judgment record demonstrates beyond a doubt that Quigley was reckless in disregarding the risk that the money he did send to the IRS would not be applied to the trust fund taxes St. Gumbeaux had collected from its employees. Though he claims he was scrupulously sending sufficient money to offset those obligations, he never took the step of directing the IRS in writing to apply all sums received to the withholding taxes first. A person's good faith belief that he paid withholding taxes is not a defense to liability under § 6672. *See Conway*, 647 F.3d at 236 ("we have repeatedly rejected the argument that a taxpayer's good faith belief that payment for the taxes had been arranged is a defense to personal liability under § 6672). Because the United States has demonstrated as a matter of law that Quigley acted willfully in failing to pay over the payroll taxes

withheld from the wages of St. Gumbeaux's employees for every quarter in 2009, the Unites States' Motion for Summary Judgment should be granted, and Quigley's motion should be denied.

## IV.  RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** the United States of America's Motion for Summary Judgment (Dkt. No. 37) and **DENY** Plaintiff's Motion for Summary Judgment (Dkt. No. 52).  As mentioned in footnote 1, in April 2017, the undersigned recommended that the District Judge grant the United States' motion to dismiss Quigley's claim brought pursuant to 26 U.S.C. § 7433.  Should the Court adopt that recommendation, as well as this recommendation, that would dispose of all claims in the case, in which case the undersigned would **FURTHER RECOMMEND** that the District Court enter judgment that Quigley take nothing on his claims.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466,

472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 23rd day of August, 2017.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE